IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| County of Somerset, Pennsylvania by and through its Board of Commissioners, Commissioner Gerald Walker, Commissioner Colleen R. Dawson, and Commissioner Pamela A. Tokar-Ickes | : | |
| v. | : | No. 336 C.D. 2023 |
| | : | Argued: November 5, 2025 |
| Anthony F. DeLuca, Somerset County Treasurer, | : | |
| Appellant | : | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK FILED: May 12, 2026

Anthony F. DeLuca, Somerset County Treasurer (Treasurer), appeals the *per curiam* order of a three-judge panel of the Somerset County Court of Common Pleas (County and trial court, respectively) denying his post-trial motions[1]

[1] "[A] trial court's order at the conclusion of a trial, whether the action is one at law or in equity, cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions or they are denied by operation of law [under] Pa.R.Civ.P. 227.4(b)." *Triple Crown Corporation, Inc. v. Lower Allen Township*, 327 A.3d 748, 754 (Pa. Cmwlth. 2024) (citation omitted).

following trial on his and the County's crossclaim for declaratory and injunctive relief, and entering judgment in favor of the County and against the Treasurer regarding the disposition of investment funds pursuant to the relevant provisions of The County Code[2] and the Second Class County Code (SCCC).[3] We affirm.

The facts in this case are undisputed. This matter involves a dispute between the County's Board of Commissioners (Commissioners) and Treasurer[4]

---

[2] Formerly, The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§101-3000.3903. The County Code was repealed by Section 5(2) of the Act of May 8, 2024, P.L. 50, No. 14, effective July 8, 2024 (Act 14), which incorporated the freestanding County Code provisions into Title 16 of the Pennsylvania Consolidated Statutes. A similar act is now found in The County Code at 16 Pa. C.S. §§101-17509. Indeed, as our Supreme Court has explained:

> Act 14 incorporated the freestanding County Code into Title 16 of the Pennsylvania Consolidated Statutes. To effectuate those changes the General Assembly repealed [T]he County Code in its entirety . . . . However, aside from a few substantive changes not relevant here, Act 14 was generally intended to affect a "continuation" of [T]he County Code, despite its repeal. *See id.* at §6; *id.* at §(6)(1) ("Except as otherwise provided in 16 Pa. C.S. Pts. I, II, III and IV, all activities initiated under [T]he County Code shall continue and remain in full force and effect and may be completed under 16 Pa. C.S. Pt. I, II, III, or IV."); *id.* at §6(2) ("Except as provided in paragraph (3), any difference in language between 16 Pa. C.S. Pts. I, II, III and IV and [T]he County Code is intended only to conform to the style of the Pennsylvania Consolidated Statutes and is not intended to change or affect the legislative intent, judicial construction or administration and implementation of [T]he County Code.").

*Kleinbard LLC v. Office of District Attorney of Lancaster County*, 328 A.3d 21, 27 n.6 (Pa. 2024). As a result, references herein to both versions are *sic passim*.

[3] The Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§3101-6302.

[4] Article 9, section 4 of the Pennsylvania Constitution provides:

**(Footnote continued on next page…)**

regarding their distinct, but sometimes overlapping, financial authority under the former provisions of The County Code. Somerset County is a sixth-class county,[5] and as such, has a three-person Board of Commissioners and Treasurer. Both

---

> County officers shall consist of commissioners, . . . treasurers, . . . and such others as may from time to time be provided by law.
>
> County officers . . . shall be elected at the municipal elections and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; all vacancies shall be filled in such a manner as may be provided by law.
>
> * * *
>
> Three county commissioners shall be elected in each county. In the election of these officers each qualified elector shall vote for no more than two persons, and the three persons receiving the highest number of votes shall be elected.
>
> Provisions for county government in this section shall apply to every county except a county which has adopted a home rule charter or an optional form of government. One of the optional forms of county government provided by law shall include the provisions of this section.

Pa. Const. art. IX, §4; *see also* former Section 401(a)(1) and (3) of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §401(a)(1) and (3), *repealed and replaced by* 16 Pa. C.S. §12301(a)(1) and (3) ("In each county, the following officers shall be elected by the qualified electors of the county: (1) Three county commissioners [; . . . and] (3) One treasurer."). Because these are constitutional offices, they can only be abolished by constitutional amendment. *Rogers v. Lycoming County Board of Commissioners* (Pa. Cmwlth., No. 161 C.D. 2023, filed January 26, 2024), slip op. at 13-14; *see also* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

[5] *See* 126 The Pennsylvania Manual 6-34 (2024); *see also Emert v. Larami Corporation*, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located.") (citations omitted).

positions are individually elected every four years. At public meetings in September and October of 2022, the Commissioners unanimously adopted Resolutions to deposit County funds for investment with identified public institutions. However, the Treasurer declined to transfer the funds because he was not involved in the drafting of the Resolutions, did not consent to the Resolutions, and did not sign the Resolutions, as required by former Section 1762(a) of The County Code.[6]

As a result, in October of 2022, the Commissioners filed an amended complaint for declaratory relief against the Treasurer in the trial court, with the Treasurer's consent, after the Treasurer declined to transfer the funds on the basis that he was not involved in the drafting of, and did not consent to, the Resolutions. In addition, after the complaint's filing, the Treasurer unilaterally determined that "the Commissioners should go through the Treasurer's office to view and modify banking and account information and, thus, he removed the online permissions of the Commissioners' Fiscal Department such that the Department could no longer view or otherwise access the County's accounts with First National Bank." Reproduced Record (RR) at 226a.

Following hearing, the trial court issued the instant order granting the following declaratory relief: (1) "[t]he Treasurer must follow the dictates of [T]he County Code and the Treasurer has no discretion to refuse duties imposed by [T]he County Code or authority to expand his duties beyond what [T]he County Code provides[;]" (2) "[t]he County Commissioners are the responsible managers and administrators of the fiscal affairs of the County to the exclusion of the Treasurer[;]"

[6] The former and present versions of Section 1762(a) of The County Code state, in pertinent part: "The county commissioners and the county treasurer shall designate by resolution one or more depositories for county money. The depositories shall be banks, banking institutions or trust companies located in this Commonwealth." 16 Pa. C.S. §14962(a).

(3) "[t]he Treasurer has no role in the formulation of the County's investment program as such decision-making authority for formulating the County's investment program is vested solely in the [Commissioners;]" (4) "[t]he [Commissioners] ha[ve] sole authority to pass resolutions establishing the County's investment program and the Treasurer has no authority to vote on or sign such resolutions[;]" (5) "[t]he Treasurer has no authority to invest County funds except as may be expressly authorized by the investment program established by the [Commissioners;]" (6) "[t]he Treasurer has no authority to transfer funds for County transactions unless the transactions are approved of by at least two County Commissioners[;]" (7) "[t]he Treasurer has no authority to refuse to transfer County funds that have been directed to be transferred by the [Commissioners] unless the Treasurer has express notice that the transfer of said funds would be illegal[;]" and (8) "[t]he Treasurer has no authority to unilaterally restrict the Commissioners' office from independently viewing and accessing the County's online banking and account information." RR at 245a-46a. The Treasurer then filed this appeal of the trial court's order.

On appeal,[7] the Treasurer asserts: (1) the trial court erred in holding that the former Section 1762(a) of The County Code did not require approval by the Treasurer before the County Commissioners adopted the September 13, 2022 and October 11, 2022 Resolutions identifying the various financial institutions involved

[7] "Our . . . review of declaratory judgment actions . . . is limited to determining whether the trial court committed an error of law or abused its discretion, and whether substantial evidence exists to support its findings. When reviewing an issue of law in a declaratory judgment action, [our] . . . review is *de novo* and the scope of review is plenary." *Rybarchyk v. Pocono Summit Lake Property Owners Association, Inc.*, 249 A.3d 31, 34 n.2 (Pa. Cmwlth. 2012) (citations omitted).

with their investment program under the former Sections 1701[8] and 1706(b)(2) of The County Code;[9] and (2) the trial court erred in holding that The County Code does not empower the Treasurer to unilaterally restrict the Commissioners' ability to view and/or modify the County's online financial records under the former Section 1760 of the County Code[10] outlining the Treasurer's authority.

---

[8] In relevant part, the former Section 1701 stated: "The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law." *Former* 16 P.S. §1701. As the Pennsylvania Supreme Court has noted: "A nearly identical provision to former Section 1701 of the County Code is now found at 16 Pa. C.S. §14901 ('The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective county in accordance with this part and other applicable law.')." *Kleinbard LLC*, 328 A.3d at 27 n.9.

[9] The former Section 1706(b)(2) stated, in relevant part:

> In counties of the . . . sixth . . . class, the commissioners shall provide for an investment program, including temporary investments, subject to restrictions contained in this act and in any other applicable statute and any rules and regulations adopted by the commissioners. Other elective officials authorized to make investments under subsection (a)(2) shall make investments in conformity with the commissioners investment program.

*Former* 16 P.S. §1706(b)(2). In turn, the present Section 14906 of The County Code contains identical substantive provisions, but merely modifies "the ***county*** commissioners shall provide. . . ." 16 Pa. C.S. §14906(b)(2) (emphasis added); *see also* Section 14984.2(a) and (c) of The County Code, 16 Pa. C.S. §14984.2(a), (c) ("The county commissioners shall have the power to create and maintain a separate capital reserve fund for anticipated legal capital expenditures. . . . The money in the fund, when invested, shall be invested in a manner consistent with the provisions of [S]ection 14906 (relating to investment of money).").

[10] The former Section 1760 provided:

> The county treasurer shall receive and receipt for all moneys due or accruing to the county. The treasurer shall keep proper accounts of all moneys received and disbursed. The treasurer's records shall be, at all times during office hours, open to the inspection of the

**(Footnote continued on next page…)**

controller and the commissioners, or any of the commissioners in counties having no controller. The treasurer shall issue receipts for all moneys received for the county, and shall transmit the duplicate or triplicate thereof daily to the controller, or to the county commissioners in counties having no controller. Said receipts shall be serially numbered, shall indicate the amount of money received, from whom, on what account and the date. The treasurer shall likewise keep daily records of all disbursals from the county treasury, and shall forward daily records thereof to the controller, or the commissioners as the case may be. The controller, or the chief clerk of the commissioners where there is no controller, shall have the right to review depository account information upon request from the county depository or depositories, without prejudice to the said depositories, of all moneys deposited in the name of the county by the treasurer. In counties having no controller, the treasurer shall render, at least quarterly and oftener, if required, a statement of all moneys received and disbursed since the treasurer's last statement, showing the balance remaining in the accounts and the names of the collectors having arrearages in taxes with the amounts thereof. The treasurer shall state the accounts at the end of each fiscal year, which statement shall be examined by the commissioners and delivered by them to the auditors for settlement.

*Former* 16 P.S. §1760. Presently, the codified provisions of Section 14960(a) through (g) state:

> **(a) Duties of county treasurer.--**The county treasurer shall receive and issue receipts for money due or accruing to the county.
>
> **(b) Accounts.--**The county treasurer shall keep proper accounts of money received and disbursed. The treasurer's records shall be open to the inspection of the controller and the county commissioners at all times during office hours.
>
> **(c) Receipts.--**The treasurer shall issue receipts for money received for the county and shall transmit the duplicate or triplicate receipts daily to the controller or to the county commissioners in counties without a controller. . . .
>
> **(d) Disbursals.--**The treasurer shall keep daily records of disbursals from the county treasury and shall forward daily records

**(Footnote continued on next page…)**

However, after reviewing the record, the parties' briefs, and the law, and hearing oral argument in this matter, we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned *per curiam* panel opinion of President Judge D. Gregory Geary, Judge Scott Bittner, and Judge Daniel Rullo of the trial court. Accordingly, we affirm on the basis of their opinion in the matter of *County of Somerset, Pennsylvania by and through its Board of Commissioners, et al. v. Anthony F. DeLuca, Somerset County Treasurer* (C.C.P. Som., No. 641 CIVIL 2022, filed February 17, 2023).

MICHAEL H. WOJCIK, Judge

Judge Wallace did not participate in the decision of this case.

---

> to the controller or the county commissioners in counties without a controller.
>
> **(e) Account information.--**The controller, or the chief clerk of the county commissioners in counties without a controller, may review depository account information upon request from the county depository, without prejudice to the depositories, of the money deposited in the name of the county by the treasurer.
>
> **(f) Quarterly statements.--**In counties having no controller, the treasurer shall provide, at least quarterly and more frequently if required, a statement of money received and disbursed since the treasurer's last statement . . . .
>
> **(g) Annual statements.--**The treasurer shall state the accounts at the end of each fiscal year. The statement shall be examined by the county commissioners and delivered by the commissioners to the county auditors for settlement.

16 Pa. C.S. §14960(a)-(g).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| County of Somerset, Pennsylvania by and through its Board of Commissioners, Commissioner Gerald Walker, Commissioner Colleen R. Dawson, and Commissioner Pamela A. Tokar-Ickes | : | |
| v. | : | No. 336 C.D. 2023 |
| Anthony F. DeLuca, Somerset County Treasurer, Appellant | : | |

**<u>O R D E R</u>**

AND NOW, this 12th day of May, 2026, the order of the Somerset County Court of Common Pleas dated March 8, 2023, is AFFIRMED.

____________________________________

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| County of Somerset, Pennsylvania by and through its Board of Commissioners, Commissioner Gerald Walker, Commissioner Colleen R. Dawson, and Commissioner Pamela A. Tokar-Ickes | : | |
| v. | : | |
| Anthony F. DeLuca, Somerset County Treasurer, Appellant | : | No. 336 C.D. 2023<br>Argued: November 5, 2025 |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE FIZZANO CANNON FILED: May 12, 2026

At issue here is the interplay between Sections 1706 and 1762(a) of the former County Code,[1] *former* 16 P.S. §§ 1706 & 1762(a).[2] Because I believe the

---

[1] Act of August 9, 1955, P.L. 323, *as amended*, *formerly* 16 P.S. §§ 101-3000.3903.

[2] I observe that the former County Code was codified and renumbered by Section 5(2) of the Act of May 8, 2024, P.L. 50, No. 14, effective July 8, 2024 (Act 14), which incorporated the former County Code provisions into Title 16 of the Pennsylvania Consolidated Statutes. The consolidated act is now found at 16 Pa.C.S. §§ 101-17509. The only change in the statutory language during codification that is of even arguable relevance here is an alteration from former Section 1762(a), which required the county commissioners, "together with" the treasurer, to

majority fails to recognize the distinction between "investments" and "deposits" as those terms are used in the statute, I dissent in part.

I agree with the majority's adoption of the opinion of the trial court insofar as the trial court concluded that the county commissioners, rather than the county treasurer, are authorized to determine where to invest county funds.[3] I disagree, however, to the extent that the county commissioners and the majority (and, indeed, the treasurer himself) fail to differentiate between the treasurer's role regarding investments and his role regarding deposits. The county treasurer's role in choosing "a depository or depositories for all county funds" is the same under either the former or the consolidated version of the County Code. That law requires

---

choose depository institutions, to current Section 14962(a), which requires the county commissioners "and" the treasurer to choose depository institutions. *Compare former* 16 P.S. § 1762(a), *with* 16 Pa.C.S. § 14962(a). There are other non-substantive revisions to the provisions at issue, none of which have been contended by either the parties or the majority to have any relevance here. The new provisions are set forth *infra* in notes 4 and 5 for ease of comparison to the quoted portions of the unconsolidated provisions.

Both parties expressly confirmed at argument that they view the adjustment in language as having no significance to our disposition of the issues here. Likewise, the majority does not assert any significance in the change of statutory language from "together with" to "and." I cite the provisions of the former County Code here in conformance with the opinion of the Court of Common Pleas of Somerset County (trial court), which properly discussed and relied on those provisions by their uncodified numbering because that version of the statute was in effect during the time period relevant to the parties' dispute.

[3] I also agree with the majority's implicit observation that post-trial motions were proper here and that, consequently, the appeal was properly filed after disposition of the post-trial motions. *See Motorists Mut. Ins. Co. v. Pinkerton*, 830 A.2d 958, 964 (Pa. 2003) (holding that where a trial court decided a declaratory judgment action that had been submitted to the court on stipulated facts pursuant to Rule of Civil Procedure 1038.1, a post-trial motion was required before filing an appeal) (citing Pa.R.Civ.P. 1038.1); *see also* Pa.R.Civ.P. 1038.1 Explanatory Comment – 1996 (explaining that one purpose of the rule requiring post-trial motions after submission of an action on stipulated facts was to eliminate prior practice under which unwary parties could err by filing post-trial motions in certain submitted cases and thereby lose their appeal rights).

the choice of the depository to be made "by the county commissioners together with the county treasurer" and "by resolution." 16 P.S. § 1762(a); *cf.* 16 Pa.C.S. § 14962(a) (using the simple conjunction "and" in place of the more prolix "together with"). Because the majority gives no effect to this clear statutory mandate on depositories, I must dissent from the majority's decision to affirm the trial court's order in its entirety and on the basis of the trial court's opinion, which authorizes the county commissioners, alone, to choose depositories for all county funds. As discussed below, I believe the relevant statute treats ***investments*** differently from ***deposits***, and I therefore dissent in part.

Former Section 1706 of the County Code, governing ***investments***, provides, in pertinent part:

> Section 1706. Investment of Funds.--
>
> (a) . . . .
>
> (2) In counties of the third, fourth, fifth, sixth, seventh, or eighth class, ***the county commissioners (or any individual other than the commissioners who serves in an elective county office, as to such moneys not otherwise required by law to be invested that the individual's office is required to collect, administer or disburse) shall invest such moneys*** consistent with sound business practice. . . .
>
> (b) . . . .
>
> (2) In counties of the third, fourth, fifth, sixth, seventh, or eighth class, ***the commissioners shall provide for an investment program***, including temporary investments, subject to restrictions contained in this act and in any other applicable statute and any rules and regulations adopted by the commissioners. ***Other elective officials authorized to make investments under subsection (a)(2) shall make investments in conformity with the commissioners investment program.***

> (c) Authorized types of investments or financial products for such moneys . . . shall be:
>
> . . . .
>
> (11) Deposits in ***savings accounts or time deposits, other than certificates of deposit*** [(CDs)] . . . .
>
> (12) Shares of an investment company . . . if the only investments of the company are in the authorized investments for county funds in paragraphs (10) and (11) and:
>
> (i) The investment company is managed in accordance with 17 CFR 270.2a-7 (relating to ***money market funds***).
>
> . . . .
>
> (13) **[*CDs*]** purchased from institutions insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund. . . .

*Former* 16 P.S. § 1706(a)(2), (b)(2) & (c)(11)-(13) (emphasis added); *see also* 16 Pa.C.S. § 14906(a)(2), (b)(2) & (c)(2)-(4).[4]

---

[4] The parallel provisions of the consolidated statute provide:

> **§ 14906. Investment of money.**
>
> **(a) Investment standards.**--
>
> . . .
>
> (2) In counties of the third, fourth, fifth, sixth, seventh or eighth class, the county commissioners or any individual other than a county commissioner who serves in an elective county office, shall invest money not otherwise required by law to be invested that the individual's office is required to collect, administer or disburse, consistent with sound business practice . . . .
>
> **(b) Investment board and investment program.--**
>
> . . .

By contrast, former Section 1762, governing ***deposits***, provides, in pertinent part:

> Section 1762. Depositories.--
>
> (a) The ***county commissioners together with the county treasurer*** shall, from time to time, ***designate, by resolution, a depository or depositories for all county funds to be deposited***. Such depository or depositories

---

> (2) In counties of the third, fourth, fifth, sixth, seventh or eighth class, the county commissioners shall provide for an investment program, including temporary investments, subject to restrictions contained in this act and in any other applicable statute and any rules and regulations adopted by the county commissioners. Other elective officials authorized to make investments under subsection (a)(2) shall make investments in conformity with the investment program required under this paragraph.
>
> **(c) Authorized investments or financial products.**--Authorized types of investments or financial products for money . . . shall be:
>
> . . .
>
> > (2) Deposits in savings accounts or time deposits, other than [CDs] . . . .
> >
> > (3) Shares of an investment company . . . if the only investments of the company are in the authorized investments for county money in paragraphs (1) and (2) and:
> >
> > > (i) The investment company is managed in accordance with 17 CFR 270.2a-7 (relating to money market funds).
> >
> > . . .
> >
> > (4) [CDs] purchased from institutions insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund . . . .

16 Pa.C.S. § 14906(a)(2), (b)(2) & (c)(2)-(4).

> shall be ***banks, banking institutions or trust companies***, located in the Commonwealth.
>
> . . . .
>
> (c) The county treasurer shall, upon the designation of such depository or depositories, immediately, transfer thereto all county funds to be deposited . . . .

*Former* 16 P.S. § 1762(a) & (c) (emphasis added); *see also* 16 Pa.C.S. § 14962(a) & (c).[5]

Thus, the statute draws a distinction between ***investments*** and ***deposits***. For example, former Section 1706(c)(11) expressly provides that ***investments*** include CDs. *Former* 16 P.S. § 1706(c)(11); *see also* 16 Pa.C.S. § 14906(c)(4). By contrast, money market accounts are generally considered ***deposits***. Forbes explains that "[a m]oney [m]arket [a]ccount [] is a bank account . . . ." ADELAIDE BY FORBES™ AI-powered summary.[6] Notably, although former Section 1706(c)(12)(i), quoted above, mentions money market ***funds*** in passing in its discussion of the

---

[5] The parallel provisions of the consolidated statute provide:

> **(a) Designation**.--The county commissioners and the county treasurer shall designate by resolution one or more depositories for county money. The depositories shall be banks, banking institutions or trust companies located in this Commonwealth.
>
> . . .
>
> **(c) Deposits**.--The county treasurer shall, upon the designation of the depository, immediately transfer all county money to be deposited and shall thereafter keep deposits solely in the depository in the name of the county.

16 Pa.C.S. § 14962(a) & (c).

[6] This summary explanation is available online on the Forbes website at https://www.forbes.com/search/?q=Money%20Market%20Account%20vs.%20Money%20Market%20Fund:%20What%27s%20the%20Difference? (last visited May 11, 2026).

management of investment companies, it does not categorize such funds as investments. More significantly, money market ***funds*** are categorized differently from money market ***accounts*** in any event. As Forbes explains, "**[*a m*]*oney* [*m*]*arket* [*a*]*ccount* [] *is a bank account***, while ***a* [*m*]*oney* [*m*]*arket* [*f*]*und* [] *is an investment fund*** managed by a private firm." ADELAIDE BY FORBES™ AI-powered summary, *supra* n.3 (emphasis added); *see also Valelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 19-CV-7998 (VEC), 2023 U.S. Dist. LEXIS 64525, at *23 n.22 (S.D.N.Y. Apr. 12, 2023) (quoting *Money Market Account vs. Money Market Fund: What's the Difference?* (FORBES ADVISOR)[7] and observing that money market funds and money market accounts are not "comparable products" and that "[t]here are a host of [] distinctions" between them). Similarly, for tax purposes, "**[*m*]*oney market funds (as opposed to money market accounts)***[] ***are structured as regulated investment companies*** . . . ," while "**[*a*] *money market account is a debt obligation of a bank and qualifies as* [] *cash or* [a] *cash item***" as distinct from an investment. Peter M. Fass, Michael E. Shaff, & Donald B. Zief, REAL ESTATE INVESTMENT TRUSTS HANDBOOK § 5:56 Ch. 5, § V (Nov. 2025 Update)[8] (emphasis added).

---

[7] The cited article is quoted in *Valelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 19-CV-7998 (VEC), 2023 U.S. Dist. LEXIS 64525, at *23 n.22 (S.D.N.Y. Apr. 12, 2023) as available at https://www.forbes.com/advisor/banking/money-marketaccount-vs-money-market-fund (last updated Jan. 18, 2023). However, that specific article does not appear to be currently available on the Forbes website.

[8] No Westlaw citation appears for this treatise. However, it can be found in Westlaw at https://1.next.westlaw.com/Document/Ifa8e081a55d811da9750f469c8ec1d44/View/FullText.html?listSource=WebsiteInternal&navigationPath=V1%2fReport%2fShared%2fListProvider%3freturnTo%3d%252FConversation%252FLandingPage%252Fconversation%252F558f7b66-1a3e-48d3-af8f-5385327cdad4%253FtransitionType%253DDefault%2526contextData%253D(sc.Default)%2526VR%253D3.0%2526RS%253Dcblt1.0%2526selectedQaId%253D0&list=All&rank=0&originationContext=docHeader&contextData=(sc.AIAssistantSearch)&transitionType=Document&needToInjectTer

Here, according to the complaint,

> the [county commissioners'] plan for investments called for $5 million to be placed in a First National Bank ***money market account***, $10 million to be placed in a sixty (60)-day CD at Somerset Trust Company, and $10 million to be placed in a ninety (90)-day CD at First National Bank. The $10 million ninety (90)-day CD amount had been lowered from the previously planned $15 million amount due to impending end-of-year County expenses. To ensure access to the funds by year's end, the $5 million difference was shifted to the sixty (60)-day CD to increase the sixty (60)-day CD amount to $10 million.

Reproduced Record (R.R.) at 6a (emphasis added). However, the treasurer, apparently without differentiating between ***investments*** and ***deposits***, refused to place any funds with Somerset Trust Company. *Id.* at 6a-7a.

The statutory language of former Section 1706 facially authorizes only the county commissioners to establish an ***investment*** program and requires the treasurer to make investments consistent with that program. *Former* 16 P.S. § 1706(a)(2) & (b)(2); *see also* 16 Pa.C.S. § 14906(a)(2) & (b)(2). Therefore, I agree with the majority that the treasurer was not entitled to a voice in the development of the county commissioners' investment program.

By contrast, former Section 1762(a) provides that the choices of financial institutions to receive ***deposits*** of county funds are to be made by the county commissioners ***together with*** the treasurer. *Former* 16 P.S. § 1762(a); *cf.* 16 Pa.C.S. § 14962(a) (providing that the choices of financial institutions to receive deposits of county funds are to be made by the county commissioners ***and*** the treasurer). The statute does not clearly provide, and the parties disagree about, the extent to which

---

ms=False&docSource=a5d4697059ac464d9a6ad51a3d3bf8ed&ppcid=fa7a26fedf174d7e8efaca646a0ed254 (last visited May 11, 2026).

the treasurer is entitled to be involved in the choice of institutions for deposits of county funds under Section 1762(a). Without deciding the precise extent of the involvement required, I observe that here, the county commissioners, other than directing the treasurer to solicit interest rate information from various institutions, apparently took the position that the treasurer was to be excluded completely from the process of choosing institutions for placement of county funds, without differentiating between investments and deposits. *See* R.R. at 11a (asserting that "treasurers are elected to county office to account for county money, ***not*** . . . ***to have a voice in what is done with it***") & 13a (seeking a declaratory judgment "that the [c]ounty [c]ommissioners are the responsible managers and administrators of the fiscal affairs of the [c]ounty, ***to the exclusion of*** **[*the*] [*t*]*reasurer***") (emphasis added). Because such an exclusion ignores the plain language of Section 1762(a), and because I conclude that the money market account contemplated by the county commissioners constituted a deposit rather than an investment, I cannot agree with the majority to the extent that its holding means the county commissioners are entitled to make the same unfettered choice under Section 1762(a) regarding deposits that they are authorized to make under Section 1706 regarding investments.

For the foregoing reasons, I dissent in part.

______________________________________________

CHRISTINE FIZZANO CANNON, Judge